Court will call the first case for this afternoon, People v. Wicks, 513-0166, counsel for the first degree and one count of discharging a firearm resulting in a death in the Circuit Court of St. Clair County. There are a number of issues with Mr. Wicks' case. I'm choosing to focus on two of them here, one of which I think entitles Mr. Wicks at the very least to a new Batson hearing, and the other of which would entitle him to a new trial. During Gwadir, Mr. Wicks' trial counsel raised the Batson challenge prior to the swearing-in and seating of the jury. He stated that the jury was not representative of the demographics of St. Clair County as a whole, and he identified a specific juror whom he alleged was struck for no reason other than race. The trial court then asked the State for a response. The State said that he had failed to demonstrate a pattern of racially motivated strikes. The trial court said the State is correct. You would have to show a pattern and denied the Batson challenge. Unfortunately, a pattern of racially discriminatory strikes is not the first stage of a Batson analysis. The first stage of a Batson analysis, as I'm sure the Court is aware, is whether or not a prima facie case is made. A prima facie case for racial discrimination can be made by showing a pattern of racially discriminatory strikes, but that's only one possible element. It's not the entirety of the analysis. It's the very definition of missing the forest for the trees. It's saying there's no tree there, therefore there's no forest. In People v. Shaw, an almost identical situation played out. In that case, the defendant's trial counsel raised a Batson challenge, saying that a particular juror had been struck for racial motivation. The trial court asked the State for a response. The State said there's no pattern. The trial court denied the motion. The second juror was struck. The defense counsel in Shaw said, I've had two jurors now. That's a pattern. The trial court said that's not a pattern and denied the motion. The Court of Appeals, this is the fourth district in People v. Shaw, said that was not the proper analysis. You have to establish the prima facie case. If that's been established, you ask the State for a non-racial reason. And then you ask the defendant to establish or to try to counter that. Therefore, because the wrong pattern had been followed, the Court of Appeals in that matter in Shaw sent the matter back for a new Batson here. That is what happened here. A Batson challenge was raised. The State said there's no pattern. And that was the beginning and the end of the trial court's analysis. It's certainly true that there's a presumption that trial courts, that trial judges know and correctly apply the law. That presumption is not irrebuttable. And the record here is very clear. He said, the trial court said, the State is right. You have to show a pattern. One juror is not a pattern. Motion denied. If that were the standard, then that would permit the State to exercise at least one racially discriminatory cause per trial. We know from well-established case law that even a single racially motivated strike is unconstitutional, that that denies the defendant his right to a fair trial. That's what? People v. Davis? Yes. Correct, Your Honor. Part of the holding. Correct. So on that basis, this matter should be remanded at the very least for a new  outcome and the absence on the bench of the trial judge. But difficult is not a reason to avoid what is the correct result. Now, if this Court wanted to go further, I believe a prima facie case was made, and it would be almost impossible for the State to articulate a race-neutral reason. The reason I say that is because if one looks at all the possible elements of a Batson prima facie case, either they're neutral or they suggest a racially motivated strike. One would be that the panel as a whole was approximately 13% African-American. The jury that was in panel was 8% African-American. That's a 5% difference. Different proportions of African-Americans on the panel to the jury is suggested for racially motivated strikes. At least one other juror was struck, although this one but that was incorrect. I can't recall the juror's name off the top of my head. She was struck because the prosecutor alleged she had said that she couldn't sit in judgment of anyone. Review of the record would say that's incorrect. She said she'd rather not do it, but not that she couldn't. The struck juror in this case was African-American, as was the defendant. And crucially, one of the witnesses in this case was a white supremacist, which would provide ample reason for trying to strike African-American jurors. The struck juror at issue here had only one statement made during the entirety of one year. She stated her name and where she worked. Other jurors, both jurors who were similar in age, education, made similar basic statements, but were retained by the state. On that basis, if this court wanted to go further, a new trial would be appropriate. But again, at the very least, a new Batson hearing should be conducted. The other issue of import here is the fact that during the pendency of this case, the trial judge came under investigation by local law enforcement, including the St. Clair Sheriff's Department and the St. Clair State's Attorney. That information should have led to the trial judge accusing himself. That information was not disclosed to the defendant. Now, this issue we're requesting plain error review, because it was not obviously preserved in the new trial motion. It came to light during the pendency of this appeal. That being said, there is evidence both within the record and also within the judicial records of the State of Illinois, which this Court can take judicial notice, that would establish this fact. The first issue is whether or not the fact of investigation is sufficient to justify the judge recusing himself on constitutional grounds. And I think here the Supreme Court cases are actually very clear. Riffo v. Baker and the Pennsylvania case cited in the brief both stand for the proposition that it's not whether or not a judge has a subjective actual bias against a defendant. That's an issue here that requires recusal. It's whether or not, as an objective matter, a normal judge on the stand has an unconstitutional probability of bias. In Riffo v. Baker, what the Supreme Court of the United States said was the investigation of a trial judge by local law enforcement creates that objectively unconstitutional level of probable bias because of the concern for camouflaging bias. Effectively, because there are so many things a judge can do that it's under a discretionary standard, a judge who is under investigation and wants to curry favor with local law enforcement could make decisions that are otherwise unreviewable. Is there evidence in the record that the trial judge knew he was under investigation? There is not, Your Honor. But that's why it's an objective standard rather than a subjective standard. If he knew, if a judge knew, would he objectively be at too high of a risk for bias? And even absent the fact that this judge may or may not have known, the fact is that the State's knew. And in my preparation for oral arguments, I found a case that is not necessarily squarely on point, but I think is subjective or is destructive on this. Is that case cited? It's not, Your Honor. I found it earlier today, in fact. It's Smith v. Phillips. Your Court will not be considering cases that you have not cited or filed a motion to cite additional authority. Right. Your Honor, in that case, though, the concern here would be whether or not if the State is in possession of information that implicates a due process concern of the defendants. Do they have to disclose it? Now, does this fall squarely within the realm of Brady? No. Brady had to do with evidence of guilt, mitigation, impeachment. But the overall principle of Brady was due process. It's ensuring fair trial. If the defendant knew the same information that the State had available, then the defendant would have been able to make the same analysis that the State did, which was whether or not they thought there's an excess of risk here. But the defendant didn't have that information. The State got to make that analysis for him. If the defendant had raised that information, would the judge have been required to refuse himself? Your Honor, as you pointed out, would there be evidence that he knew? At that point, there would have been evidence that he knew. The defendant would have been able to state, Your Honor, it's my understanding you were under investigation. That would have actually been a prima facie evidence. For these reasons, I'm asking that you remand the State for further proceedings. Thank you, Counsel. We will have an opportunity to move to the following. Counsel Flora Appleby. Good afternoon, Your Honors, Counsel, and may it please the Court. My name is Valerie Osment, and I represent the people of the State of Illinois in this matter, the people versus Kenny Wicks. Your Honor, the defendant brings up four issues on appeal. The first, the defendant challenges the trial court's January 28, 2013, denial of defense counsel's oral motion for a Batson challenge. The second is that the defendant challenges the trial court's January 29 and 30, 2013, discretionary decision to sustain the State's objections when defense counsel attempted to ask a witness at trial questions about his criminal history, specifically misdemeanor offenses, none of which were crimes of moral turpitude, dishonesty, or false statements. The third, the defendant challenges the sufficiency of the evidence. And the fourth, the defendant challenges the trial court judge's failure to recuse himself from presiding over the defendant's case and the State's failure to disclose this information of the investigation to the defendant. First, the defendant, in oral argument, discusses the Batson challenge. The defendant argues that there were four members of the entire panel who self-identified as African-American, and therefore the defendant contends that the record clearly establishes that both a powder and a prima facie case were established  However, the record reveals that the State and defense counsel both struck one African-American veneer person preemptorily, two African-American veneer persons were both struck for cause, and the one remaining African-American veneer person was tendered by the State, accepted by defense counsel, and eventually served on the jury. In Batson v. Kentucky, the Supreme Court held that the Equal Protection Clause forbids a prosecutor to challenge potential jurors solely on account of their race. However, there's a three-step analysis that was established in determining whether or not the State used its preemptory challenges to remove veneer persons on the basis of their race. Batson first requires a defendant to establish a prima facie case of discrimination. The trial court's determination that a defendant has failed to establish a prima facie case of purposeful discrimination will not be overturned unless it is against the manifest weight of the evidence. With respect to the first step in the analysis under Batson, which is what the defendant takes issue with on appeal, in order to establish a prima facie case, the defendant must demonstrate that the State exercises preemptory challenges to remove members of a cognizable racial group from the veneer and that the defendant was a member of that group. The defendant is then entitled to rely on the fact as to which there can be no dispute that preemptory challenges constitute a jury selection practice that permits those to discriminate who are of the mind to discriminate. And finally, the defendant must demonstrate to the court how these facts, among other relevant circumstances, raise an inference that the State used for that practice to exclude veneer persons on account of their race. In determining whether the defendant has made the requisite showing of purposeful discrimination, the relevant circumstances that a trial judge may consider, not shall, but may, include, but are not limited to, whether the defendant and the excluded veneer person share the same race, which they did, a pattern of strikes against black veneer persons, there was not a pattern, the prosecutor's questions and statements during Bordier in exercising his challenges, there's nothing in the record to support that inference, whether there has been a disproportionate use of preemptory challenges against African Americans, there was not, and whether the excluded African Americans were of a heterogeneous group sharing race as their only common characteristic. Counsel, what about the, I think the opposing counsel mentioned that one of the prospective jurors, he or she just asked them what their name was, their age, and that was it. There was no further questions with that particular person who made it on the panel was Bordier, and yet there were folks who were, I guess, Caucasian, who sent questions and they got in. So how does Batson square with that scenario? Your Honor, the record reveals that the opposite is true as well. In my brief, I cited specific jurors who were asked those same basic questions, name, where you're from, those specific questions, but were also struck preemptorily. The state exercised three other preemptory strikes, and most of those didn't require an explanation beyond they just wanted to strike them preemptorily. And were these, you know, a jury trial, you've got the judge asking some questions, and then the state's attorney, and then the defense attorney. Do you recall if these folks were asked questions from either the judge or another attorney? I mean, I don't want to just focus on what, you know, the state's attorney asked. Your Honor, I don't believe that the judge asked any questions, but they went back and forth between defense counsel and the prosecution. And, by the way, the record also reveals that no challenges were made until after all the jury was picked, but before they were sworn. So at the last second, defense counsel had an issue with some of the jurors that were attended and some that were struck. For example, in People v. Peoples, the Illinois Supreme Court concluded that the defendant there had failed to establish a Batson-Primafashi case. The court reasoned that the record clearly showed the veneer person in question was the only African-American veneer person that the state preemptorily struck, which is exactly what happened in this case. And although said veneer person and the defendant in that case did share the same race, the court found that this did not amount to a pattern of strikes. The fact that a prosecutor exercises a preemptory challenge against a defendant against a black veneer member does not, without more, demonstrate that the prosecutor engaged in purposeful discrimination. As I mentioned previously, the record demonstrates that, yes, the defendant and one of the four jurors that the state preemptorily struck were both African-Americans, so this factor would weigh in favor of a Primafashi case. However, as the court in People v. Williams said, although this circumstance is relevant, it is not dispositive in determining whether a Primafashi case exists. Another factor that the trial court could have and did in this case consider was whether the evidence in this case established a pattern of strikes against African-American veneer persons by the state. The Illinois Supreme Court in People v. Andrews held that a pattern of strikes is created where the strikes affect members of a certain race to such a degree or with such a lack of apparent nonracial motivation that it suggests the possibility of racial motivation. Here the record clearly shows that the juror in question was the only African-American veneer person that the state preemptorily struck. So as discussed, in determining whether the defendant has established a Primafashi case under Batson, there are several relevant circumstances that the court may consider. The use of the word may instead of shall logically means that considering the entire list of factors is not mandatory for the trial court and a reviewing court should not substitute its judgment for that of the trial court. Moreover, simply because the trial court only verbalized its consideration of one relevant factor, this does not mean that the court did not consider the totality of the relevant factors in all relevant circumstances surrounding the preemptory strike to see if it gave rise to a discriminatory purpose. As there is a strong presumption, as opposing counsel mentioned, that the trial judge knew and followed the law unless the record indicates otherwise, and in this case it does not. Further, this court may affirm for any reason warranted by the record, regardless of the reasons relied upon by the lower court. And although the trial court's reasoning for dismissing the motion may provide assistance to this court, this court should review the trial court's ultimate decision and not the reasons given for it. As it relates to the last argument, whether or not the trial court's decision should have confused itself and whether or not the State should have disclosed that information, it's very simple. The State was under specific instructions by the FBI to not talk about this case as it could have affected other members of the court system and they didn't want word to get out. The prosecutor simply could not violate instructions from the FBI and go and tell the defendant that he was currently being investigated, especially considering that the judge didn't even know he was being investigated and there's nothing in the record that indicates that, as Justice Moore pointed out. Further, there's nothing in the record to even show that the defendant suffered any prejudice. The trial court judge in this case gave the defendant the minimum sentence statutorily that it could on both the first-degree murder charge and the firearm enhancement. So even if there was another judge in this case, the defendant got the lowest possible sentence that he could have gotten no matter what. There's simply no case law as the... Well, is that a reason to not give a Batson hearing because he got the lowest sentence? Does he still want a fair trial? Yes, Your Honor. Are you talking about the first issue, whether or not to remand for a Batson hearing? Is that what Your Honor's question was? Well, maybe I'm confusing the issues, but you bring up sentencing and I'm still thinking about Batson. So if your argument as far as a Batson hearing is concerned that he got the lowest possible sentence, that doesn't seem to suggest that it has anything to do with whether he had a fair trial. That is possible, Your Honor. However, the record clearly demonstrates that an inquiry into whether a Primifaci case of discrimination, the trial court did make that inquiry. And just because you only verbalized perhaps one relevant factor doesn't mean that he didn't consider all of the relevant factors. As no law or case law says that trial courts are required to demonstrate for the record in detail the reason for which they decided what they decided. And for these reasons, the State respectfully requests this Court to affirm the defendant's conviction and sentence. Thank you. Thank you, Counsel. Rebell. Your Honor, with regards to the Batson issue, it is unclear to me if the State is arguing that the trial court properly made, properly followed the Batson procedure and determined there was not a Primifaci case made, or if the State is arguing that were you to look at the record, you could establish that a Primifaci case was made even if the trial court followed the wrong procedure. The trial court, there is a presumption that the trial court acted correctly. That can be overcome when the record says differently. The record here could not be clearer. The State's response to the Batson challenge was there's no pattern. The trial court said you're right. You have to establish a pattern. You didn't. And ended the inquiry. That does not conform with the Batson procedure. If the trial court wanted to ask the State for their response, then he had to have found a Primifaci case, asked the State for their non-racial motivation, and then gone back to the defendant to see if he could rebut that. But that's not what happened. If, alternatively, what the State is arguing is that you should look at the record and consider whether or not a Primifaci case was made, I think in that circumstance, again, Shaw is illustrative here. In Shaw, an almost identical objection was made. An almost identical series of events played out from that where the trial court asked the State for a response, the State says there's no pattern, and the trial court denies the motion. In that case, the defendant received a new Batson hearing. Your Honor, you asked does that mean he, you know, does the fact that he, the defendant, got a minimum sentence affect the Batson claim? And I can't recall the case off the top of my head, but there is case law. Actually, I apologize for that. I shouldn't preference case law, not in the record. But it is possible for this Court to remand it solely for the purposes of a Batson hearing and, pending that, whether or not a new trial is ordered. The trial court would make the determination, ask for the Batson hearing, and then the determination would not be followed. Okay. Counsel, what about, and I think the State was arguing primarily at that point that on issue number 4, that since the defendant was sentenced to the minimum, that, therefore, this issue of the judge being under investigation was, she didn't use these words, but it was not prejudiced, because it was the minimum sentence anyway. Your Honor, cited in the reply brief, if you look at some of the cases that follow Ripple v. Baker, the Supreme Court has made clear that actual prejudice is not the standard here, whether or not the defendant was actually prejudiced by any determination of the trial court. And forgive me for not recalling the citation, but it is in the reply brief. There was a case out of Louisiana in which the Supreme Court of Louisiana denied a motion for a new trial on the grounds of there being an investigation or being possible bias on the part of the trial court. The Supreme Court of Louisiana said you have to show actual bias. That went to the United States Supreme Court. The United States Supreme Court said summarily, no, the analysis is whether or not a judge, any judge, objectively, in that circumstance, has the probability of bias, not whether that particular judge evidenced any actual bias. Eventually, the Louisiana Supreme Court said that, no, there wasn't any probability of bias there, because in that case the trial judge was not under criminal investigation. He was just tangentially involved in some circumstance of the trial beforehand. So inquiry into whether or not there was actual bias is improper under Supreme Court precedent. It's whether or not objectively there's a probability of bias on the part of a garden variety, not garden variety, I apologize, but average judge. And I think under those circumstances, that's why there should be new trial workers here. That information should have been disclosed. And if the trial judge was aware of it, that would have presented a unconstitutional probability of bias. If there are no more questions, I'll yield back. Thank you, counsel. This court will take the matter under advisement and issue its decision in due course.